UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
DAMIAN CHIMBOLEMA, DIEGO ARMANDO CORO VALENTE, FELIX GERMAN EVAS GUAMAN and ANGELICA MARIA JEREZ ASITIMBAY, individually and on behalf of all others similarly situated,

                              Plaintiffs,

      -against-

BROOKLYN GRID LLC, SAMEER BATRA, and GIL BROITMAN,
                              Defendants.
------------------------------------------------------------------------X

Case No. 24-CV-2844

**CLASS AND COLLECTIVE ACTION COMPLAINT**

**JURY TRIAL REQUESTED**

Plaintiffs Damiam Chimbolema ("Chimbolema"), Diego Armando Coro Valente ("Coro"), Felix German Evas Guaman ("Evas"), and Angelica Maria Jerez Asitimbay ("Jerez") (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, by their attorneys, TakeRoot Justice, complaining of the Defendants, Brooklyn Grid LLC ("BK Grid"), Sameer Batra ("Batra"), and Gil Broitman ("Broitman") (collectively, "Defendants"), respectfully allege as follows:

**NATURE OF CLAIMS**

1. This lawsuit seeks to recover unpaid wages and overtime compensation for Plaintiffs and similarly situated individuals who have worked as construction workers for Defendants pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* ("FLSA"), and the New York Labor Laws §§ 190 *et seq.* and 650 *et seq.* ("NYLL").

2. Defendants have engaged in unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation.

3. Defendants failed to pay Plaintiffs and similarly situated employees overtime compensation at a rate of 1.5 times their regular rate of pay for all hours worked in excess of 40 hours per work week.

4. Defendants often failed to pay Plaintiffs and all similarly situated employees the applicable New York State minimum wage rate for all hours worked.

5. Defendants often paid Plaintiffs and similarly situated employees infrequently and incompletely, incurring substantial debts of unpaid wages owed to Plaintiffs and similarly situated employees.

6. At all relevant times, Plaintiffs and all similarly situated employees were non-exempt employees pursuant to the FLSA and the NYLL and were therefore entitled to overtime compensation, minimum wages, and timely payment of all wages due.

7. Defendants failed to provide adequate wage notices at the time of hire, or anytime thereafter, to Plaintiffs and other similarly situated employees.

8. Nor did Defendants provide accurate wage statements to Plaintiffs and other similarly situated employees.

## JURISDICTION AND VENUE

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, in that this is an action arising under the FLSA.

10. This Court has supplemental jurisdiction over the claims arising under New York state law pursuant to 28 U.S.C. § 1367, in that the New York state law claims are so closely related to Plaintiffs' federal claims as to form the same case or controversy under Article III of the United States Constitution.

11. Venue is proper in this judicial district under 28 U.S.C. § 1391, as a substantial part of the events and omissions giving rise to the claims occurred in this judicial district, and

Defendants conduct business through their employees, including Plaintiffs, within this judicial district.

## THE PARTIES

### Plaintiffs

12. Plaintiffs are adult individuals residing in the State of New York.

13. Plaintiffs and all similarly situated employees were employed by Defendants.

14. Plaintiffs and all similarly situated employees are covered employees within the meaning of the FLSA and NYLL.

### Defendants

15. BK Grid is a domestic limited liability company with its principal place of business located at 1216 Olmstead Ave, Bronx, NY 10462.

16. BK Grid's address registered with the Department of State is 67 West. St. Suite 401, Brooklyn, NY 11222.

17. Upon information and belief, Batra and Broitman are individuals residing in the State of New York.

18. At all relevant times, Batra and Broitman were owners and/or managers of BK Grid.

19. At all relevant times, Batra and Broitman were and still are officers, directors, shareholders, owners, and/or persons in control of BK Grid, who exercise significant control over BK Grid's operations and had the authority to hire, fire, and discipline their employees; set employees' work schedules and conditions of employment; determine the rate and method of payment for employees; and maintain employment records.

20. Upon information and belief, Defendants jointly employed Plaintiffs and all similarly situated employees with various subcontractors who jointly managed, supervised, hired,

fired, and controlled the manner of pay of Plaintiffs, and are jointly and severally liable in this matter.

21. At all relevant times, Defendants were a single enterprise and/or joint employers as Defendants operate for the same business purpose and have common ownership and management.

22. Defendants are contractors as defined by NYLL §198-e(8)(b) and are therefore liable for any debt resulting from the actions or omissions of their subcontractors under NYLL §198-e.

23. At all relevant times, Defendants were responsible for setting Plaintiffs' and all similarly situated employees' schedules and daily activities and supervising their performance.

24. At all relevant times, Defendants had the power to discipline and terminate Plaintiffs and all similarly situated employees.

25. At all relevant times, Defendants were responsible for compensating Plaintiffs and all similarly situated employees.

26. At all relevant times, Defendants knew or should have known that their conduct was prohibited by the FLSA and NYLL.

27. Defendants are covered employers within the meaning of the FLSA and the NYLL.

## STATEMENT OF FACTS

### Plaintiffs' Factual Allegations

28. Defendants employed Plaintiffs as construction workers from around July 2021 until around September 2022.

29. As construction workers, Plaintiffs' primary job duties included demolition, excavation, tiling, painting, cleaning, and general construction work.

30. Upon information and belief, Plaintiffs were jointly employed by BK Grid and a series of subcontractors whose identities are largely unknown to Plaintiffs.

31. During approximately the last month of their employment by Defendants, around September 2022, Plaintiffs were jointly employed by the subcontractor JCM Pro Builders Limited Liability Company ("JCM").

32. With the possible exception of the time Plaintiffs were jointly employed by JCM, Defendants and the relevant subcontractors failed to adequately track Plaintiffs' working hours and did not mandate them to keep a record of their time.

33. Plaintiffs regularly worked in excess of forty (40) hours per week, as described below.

34. For approximately the first two (2) or three (3) months of their employment, Plaintiffs were generally paid their promised regular rate for the hours worked but were not paid the overtime premium for hours worked over forty (40).

35. Beginning around the third or fourth month of Plaintiffs' employment and continuing until approximately August 2022, Defendants began paying Plaintiffs less frequently and incompletely, incurring substantial debts of unpaid wages owed to Plaintiffs.

36. At times, Plaintiffs were paid between one-hundred and three-hundred dollars every two weeks.

37. As a result, Plaintiffs' actual payrate periodically fell below the New York State minimum wage.

38. Plaintiffs complained numerous times about the infrequent and incomplete pay and were promised by agents of Defendants that their pay would be made up later.

39. During the last month or so of their employment, around September 2022, Plaintiffs were jointly employed by BK Grid the subcontractor JCM.

40. During this period, Plaintiffs' typical schedules were reduced to approximately forty (40) hours per week, and they received their correct pay, including overtime.

41. JCM implemented a timekeeping system through an app called Exaktime which Plaintiffs downloaded to their phones and used to clock in and out.

42. The Exaktime app was only in usage for approximately September 2022, the last month of Plaintiffs' employment.

43. In or around September 2022, Plaintiffs were told by JCM not to come to work until JCM told them to come back, but JCM never called them back to work.

44. In or around September 2022, Plaintiffs sought help from the organization New Immigrant Community Empowerment ("NICE") to obtain their unpaid wages from BK Grid.

45. Shortly after NICE contacted BK Grid to advocate on behalf of the Plaintiffs, BK Grid blocked the Plaintiffs' access to the time records in the apps on their phones.

### Plaintiffs' Schedules and Pay

**A.   Plaintiff Chimbolema**

46. From approximately July 2021 through August 2022, Chimbolema worked approximately seventy-five (75) hours of compensable time per week, as follows:

47. Chimbolema regularly worked six (6) days per week, Mondays through Saturdays and often worked on Sundays as well.

48. Chimbolema almost always began work at 7:00 a.m. and his end time varied between 6:00 p.m. and 12:00 a.m., with his average workday being approximately thirteen (13) hours.

49. Chimbolema usually received a thirty (30) minute lunch break.

50. On approximately three (3) occasions, Chimbolema worked overnight at the construction site.

51. During approximately his last month of employment, Chimbolema worked around forty (40) hours per week and received his correct pay.

52. Chimbolema's promised rate of pay was $200.00 per day, or $25.00 per hour assuming a standard eight (8) hour day.

53. Defendants consistently failed to make timely wage payments to Chimbolema. As a result of this recurring issue, they accumulated a substantial debt owed to Chimbolema in unpaid wages. This outstanding debt amounts to at least $7,700.00, according to his own records.

**B.    Plaintiff Coro**

54. From approximately July 2021 through August 2022, Coro worked approximately fifty-two and a half (52.5) hours of compensable time per week, as follows:

55. Coro regularly worked five (5) days per week, Mondays through Fridays and sometimes worked on Saturdays as well.

56. Coro almost always began work at 7:00 a.m. and his end time varied, with his average workday being approximately eleven (11) hours.

57. Coro usually received a thirty (30) minute lunch break.

58. During approximately his last month of employment, Coro worked around forty (40) hours per week and received his correct pay.

59. Coro's promised rate of pay was $170.00 per day, or $21.25 per hour assuming a standard eight (8) hour day.

60. Defendants consistently failed to make timely wage payments to Coro. As a result of this recurring issue, they accumulated a substantial debt owed to Coro in unpaid wages. This outstanding debt amounts to at least $4,200.00, according to his own records.

**C.    Plaintiff Evas**

61. From approximately July 2021 through August 2022, Evas worked approximately seventy-five (75) hours of compensable time per week, as follows:

62. Evas regularly worked six (6) days per week, Mondays through Saturdays and often worked on Sundays as well.

63. Evas almost always began work at 7:00 a.m. and his end time varied between 6:00 p.m. and 12:00 a.m., with his average workday being approximately thirteen (13) hours.

64. Evas usually received a thirty (30) minute lunch break.

65. On approximately three occasions, Evas worked overnight at the construction site.

66. During approximately his last month of employment, Evas worked around forty (40) hours per week and received his correct pay.

67. Evas' promised rate of pay was $200.00 per day, or $25.00 per hour assuming a standard eight (8) hour day.

68. Defendants consistently failed to make timely wage payments to Evas. As a result of this recurring issue, they accumulated a substantial debt owed to Evas in unpaid wages. This outstanding debt amounts to at least $8,500.00, according to his own records.

D. **Plaintiff Jerez**

69. From approximately July 2021 through August 2022, Jerez worked approximately fifty-seven (57) hours of compensable time per week, as described below.

70. Jerez regularly worked six (6) days per week, Mondays through Saturdays. On occasion, she also worked Sundays or did not work on Saturday.

71. Jerez almost always began work at 7:00 a.m. and her end time varied between 3:00 p.m. and 10:00 p.m., with her average workday being approximately ten (10) hours.

72. Jerez usually received a thirty (30) minute lunch break.

73. During approximately his last month of employment, Jerez worked around forty (40) hours per week and received his correct pay.

74. Jerez's promised rate of pay was $200.00 per day, or $25.00 per hour assuming a standard eight (8) hour day.

75. Defendants consistently failed to make timely wage payments to Jerez. As a result of this recurring issue, they accumulated a substantial debt owed to Jerez in unpaid wages. This outstanding debt amounts to at least $7,000.00, according to her own records.

### Notices of Pay

76. Defendants failed to provide Plaintiffs and all similarly situated employees, Notices of Pay Rate at the time of their hire, or at any time thereafter, containing their rates of pay, the designated payday, or other information required by NYLL § 195(1).

77. Because Plaintiffs did not receive notices of hire listing their hourly and overtime pay rates, they were not given notice of their right to overtime wages or even their right to be paid on an hourly, rather than daily, basis.

78. Because of this, Plaintiffs were monetarily harmed because the lack of notice hurt their ability to promptly raise the issue of being underpaid on days when they worked longer hours and received the same daily rate and when they worked overtime, depriving them of income for longer than if they had received the proper notice.

### Wage Statements

79. Defendants also failed to furnish to Plaintiffs and all similarly situated employees, with each wage payment, an accurate statement listing their regular and overtime rates of pay and the number of regular and overtime hours worked, or any other information required by NYLL § 195(3).

80. Because Plaintiffs did not receive wage statements, Plaintiffs were not able to accurately assess how many hours they had worked and if they had been paid their full wages for the time worked. This made it difficult for them to track the amount of unpaid wages they were owed.

81. Plaintiffs were therefore monetarily harmed because the lack of wage statements hurt their ability to promptly raise the issue of being underpaid and deprived them of income for longer than if they had received the proper wage statements.

## FLSA Collective Action

82. Plaintiffs bring this lawsuit, in part, as a collective action on behalf of themselves and all similarly situated persons who were employed during the statute of limitations period and who elect to opt-in to this action (the "FLSA Collective"), pursuant to 29 U.S.C. § 216(b).

83. Upon information and belief, the FLSA Collective consists of no less than thirty (30) similarly situated current and former employees of Defendants who all performed the same or similar primary duties as construction workers, and who, during their employment with Defendants, work or worked in excess of forty (40) hours per week and who were damaged due to Defendants' common policy and practices in violation of the FLSA including, *inter alia*, willfully denying them overtime wages and failing to timely pay their wages owed.

84. As part of their regular business practices, during the relevant period, Defendants engaged in a pattern, practice, and/or policy of violating the FLSA, including, *inter alia*, (i) failing to pay the FLSA Collective overtime wages for the hours that they worked in excess of 40 hours per workweek, and (ii) failing to timely pay wages owed.

85. Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation.

86. Defendants' unlawful conduct has been intentional, willful, in bad faith, and has caused significant damage to the FLSA Collective.

87. The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendants, are readily identifiable, and are locatable through Defendants' records. These similarly situated employees should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b).

## NYLL Class Action

88. Plaintiffs bring this lawsuit, in part, as a class action under the NYLL and applicable regulations thereunder.

89. The putative class that Plaintiffs seek to represent, pursuant to Federal Rule of Civil Procedure 23, shall be defined as: individuals employed by BK Grid as construction workers during the statute of limitations period (the "NYLL Class").

90. Plaintiffs allege that, on behalf of themselves and the NYLL Class, that Defendants violated, *inter alia*, the NYLL by: (i) failing to compensate Plaintiffs and the NYLL Class at the applicable minimum wage for all hours worked under 40 hours in a workweek; (ii) failing to timely pay Plaintiffs and the NYLL class their full wages on a weekly basis (iii) failing to compensate Plaintiffs and the NYLL Class at one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek; (iv) failing to provide Plaintiffs and the NYLL Class Notices of Pay Rate at the time of their hire, or at any time thereafter, containing their rates of pay, the designated payday, or other information required by NYLL § 195(1); and (v) failing to furnish Plaintiffs and all similarly situated employees accurate wage statements with each payment, as required by NYLL § 195(3).

91. <u>Numerosity and Impracticality of Joinder</u>: While the exact number of NYLL Class members is unknown to Plaintiffs and can only be ascertained through discovery, Plaintiffs believe there are at least forty (40) putative class members. The number of NYLL Class members is therefore too numerous to be joined individually in the lawsuit.

92. <u>Existence and Predominance of Common Questions</u>: Plaintiffs and NYLL Class members share in common questions of law and fact that predominate over questions affecting only individuals within the class. These common questions include, without limitation:

    a. Whether Plaintiffs and the NYLL Class worked over 40 hours per week;

    b. Whether Defendants failed to pay Plaintiffs and the NYLL Class all minimum wages owed to them;

    c. Whether Defendants failed to pay Plaintiffs and the NYLL Class all overtime compensation owed to them;

    d. Whether Defendants failed to timely pay Plaintiffs and the NYLL Class their wages owed;

    e. Whether Defendants failed to provide Plaintiffs and the NYLL Class with their notices of pay rate;

    f. Whether Defendants failed to furnish accurate wage statements to Plaintiffs and the NYLL Class;

    g. Whether Plaintiffs and the NYLL Class are entitled to liquidated damages.

93. <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the NYLL Class they seek to represent. Having worked for Defendants as construction workers, Plaintiffs and NYLL Class members were subject to the same scheduling and compensation practices and policies as alleged herein and therefore sustained the same or similar injuries and damages.

94. <u>Adequacy of Representation</u>: Plaintiffs will fairly and adequately represent and protect the interests of the NYLL Class because their interests are aligned and do not conflict with those of the members of the NYLL Class. Plaintiffs are willing and able to represent the NYLL Class and have retained competent and experienced counsel who are qualified and experienced in employment class action litigation and who intend to prosecute this action vigorously.

95. <u>Superiority of Method</u>: A class action is superior to other methods for adjudicating this controversy fairly and efficiently. Individual joinder is not practical and the common questions of law and fact in class members' cases predominate over questions affecting them individually. Judicial economy is best served by allowing all similarly situated people to litigate their claims in one class action, saving the Court and all parties time and expense.

## FIRST CAUSE OF ACTION

## ON BEHALF OF PLAINTIFFS, INDIVIDUALLY, AND THE FLSA COLLECTIVE

*Claims under the Fair Labor Standards Act for Unpaid Overtime*

96. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

97. In the performance of their duties for Defendants, Plaintiffs and the FLSA Collective worked substantially more than forty (40) hours per week, yet did not receive overtime compensation at a rate of one and one-half times their regular rate of pay, or one and one-half times the applicable minimum wage, for the labor they provided to Defendants, as required by the FLSA 29 U.S.C. §§ 206 and 207.

98. The amount of unpaid overtime wages will be determined at trial.

99. Defendants' violations of the FLSA, as described in this complaint, were willful and intentional.

100. Plaintiffs and the FLSA Collective are entitled to recover from Defendants all wages due, liquidated damages, all reasonable attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION

## ON BEHALF OF PLAINTIFFS, INDIVIDUALLY, AND THE NYLL CLASS

*Claims under New York Labor Law for Unpaid Minimum Wages*

101. Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

102. Defendants were required to pay Plaintiffs and the NYLL Class at an hourly rate of $15.00 per hour, the applicable New York State minimum wage, under NYLL § 652 and corresponding New York State Department of Labor Regulations, including, but not limited, to 12 N.Y.C.R.R.§ 142-2.1.

103. Defendants willfully failed to pay Plaintiffs and the NYLL Class their minimum hourly wages in violation of the NYLL Article 19, §§ 650 et seq., and corresponding New York State Department of Labor Regulations.

104. The amount of unpaid minimum wages will be determined at trial.

105. Plaintiffs and the NYLL Class are entitled to recover from Defendants all wages due, liquidated damages, all reasonable attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

## THIRD CAUSE OF ACTION

## ON BEHALF OF PLAINTIFFS, INDIVIDUALLY, AND THE NYLL CLASS

*Claims under New York Labor Law for Unpaid Overtime*

106. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

107. The Defendants willfully and intentionally failed to pay Plaintiffs and the NYLL Class overtime wages at a rate of one and one-half times their regular rate of pay, or one and one-half times the applicable minimum wage, for each hour worked in excess of forty (40) hours per week, in violation of the NYLL, including 12 N.Y.C.R.R § 142-2.2.

108. Plaintiffs and the NYLL Class are entitled to recover from Defendants all wages due, liquidated damages, all reasonable attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

## FOURTH CAUSE OF ACTION

## ON BEHALF OF PLAINTIFFS, INDIVIDUALLY, AND THE NYLL CLASS

*Failure to Timely Pay Wages Under the NYLL*

109. Plaintiffs repeat and reallege all prior allegations set forth above.

110. Defendants employed Plaintiffs and the NYLL Class as manual workers, as defined by N.Y. Labor Law § 190(4).

111. Defendants failed to timely pay Plaintiffs and the NYLL Class their earned wages in accordance with the agreed-upon terms of employment on a weekly basis and not later than seven (7) calendar days after the end of the week in which the wages were earned, in violation of NYLL § 191(1)(a)(i).

112. Plaintiffs and the NYLL Class are entitled to recover from Defendants all wages due, liquidated damages, all reasonable attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

## **FIFTH CAUSE OF ACTION**

## **ON BEHALF OF PLAINTIFFS, INDIVIDUALLY, AND THE NYLL CLASS**

*Claim for Defendants' Failure to Provide Paystubs Under New York Labor Law*

113.   Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

114.   Defendants failed to provide full and accurate paystubs to Plaintiffs and the FLSA Collective each time Defendants paid wages to Plaintiffs in violation of NYLL § 195(3).

115.   As Defendants failed to provide Plaintiffs and the FLSA Collective with wage statements as required by NYLL § 195(3), Plaintiffs and the FLSA Collective are entitled to liquidated damages in the amount of $250.00 per day for every day in which the violation occurred, up to a maximum of $5,000.00, along with all reasonable attorneys' fees and costs.

## **SIXTH CAUSE OF ACTION**

## **ON BEHALF OF PLAINTIFFS, INDIVIDUALLY, AND THE NYLL CLASS**

*Claim for Defendants' Failure to Provide Notices Upon Hire Under New York Labor Law*

116.   Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

117.   Defendants failed to provide Plaintiffs and the FLSA Collective a notice at the time of hire in violation of NYLL § 195(1).

118.   As Defendants failed to provide Plaintiffs and the FLSA Collective with payroll notices as required by NYLL § 195(1), Plaintiffs and the FLSA Collective are entitled to liquidated damages in the amount of $50.00 per day in which the violation occurred, up to a maximum of $5,000.00, along with all reasonable attorneys' fees and costs.

**WHEREFORE** Plaintiffs, on behalf of themselves, the FLSA Collective and the NYLL Class, pray for relief as follows:

A. Certifying this action as a collective and class action, under §216(b) of the FLSA and Rule 23(b)(3) of the Federal Rules of Civil Procedure;

B. Ordering notice to the putative class and collective members at the earliest opportunity to ensure class members' claims are not lost to the State and Federal statute of limitations;

C. Declaring that the Defendants violated the Fair Labor Standards Act and New York Labor Law;

D. Declaring that the Defendants' FLSA violations were willful;

E. Awarding Plaintiffs and the FLSA Collective their unpaid overtime wages due under the FLSA, as well as an equal amount in liquidated damages;

F. Awarding Plaintiffs and the NYLL Class their unpaid minimum and overtime wages, and untimely wages due under the NYLL, as an equal amount in liquidated damages, statutory damages due for notice and wage statement violations;

G. Prejudgment and post-judgment interest;

H. Reasonable attorneys' fees and costs of the action; and

I. Such other relief as this Court shall deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: New York, New York
April 15, 2024

TAKEROOT JUSTICE
By:

*/s/ Linden Miller*

Linden Miller
123 William St., Suite 401
New York, NY 10038
(908) 251-9748
Lmiller@takerootjustice.org

*/s/ Samantha Wilhelm*
Samantha Wilhelm
123 William Street, Suite 401
New York, NY 10038
(646) 923-8315
Swilhelm@takerootjustice.org

*Attorneys for Plaintiffs*